IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN MCCARTHY, | : | |
| Plaintiff | : | Civil Case |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF BUCKS, et al. | : | No. 08-1123 |
| Defendants | : | |

**MEMORANDUM OPINION**

**Stengel, J.**                                                                 **October 28, 2010**

In March, 2006, Mr. McCarthy was a pre-trial detainee incarcerated at the Bucks

County Correctional Facility.  While incarcerated, Mr. McCarthy suffered from a

wrist/arm abscess, which required surgical removal of the abscess, hospitalization, and

resulted in "some degree of permanent pain and dysfunction."

Mr. McCarthy has filed a second amended complaint against the County of Bucks,

Thomas French, Dr. Eleanor M. Travers, the Bucks County Health Department, and Dr.

David Davis.[1]  Dr. Travers and Bucks County filed a motion for summary judgment

requesting judgment in their favor on Mr. McCarthy's claim that Bucks County and Dr.

Travers violated 42 U.S.C.A. § 1983.  The § 1983 claim is the only claim remaining

against Dr. Travers and Bucks County.  For the reasons set forth below, I will grant the

motion.

---

[1] Edward J. Donnelly, Harris Gubernick, John Doe 1, and John Doe 2 are no longer
defendants in this case.  See Docket, McCarthy v. Cnty. of Bucks, No. 08-1123 (E.D. Pa.).  John
Doe 3 has been identified as the Bucks County Health Department.  Id.

## I.    BACKGROUND

### A.    Treatment Received at the Bucks County Correctional Facility

On March 7, 2006, Kevin McCarthy arrived at the Bristol Township Police Department to discuss a retail theft charge.  See Defendants' Statement of Facts at ¶ 5; Plaintiff's Statement of Facts at ¶ 5.  Mr. McCarthy was taken into custody and Deputy Sheriff Thomas French transported Mr. McCarthy from the Bristol Township Police Department to the Bucks County Correctional Facility.  See Defendants' Statement of Facts at ¶ 12; Plaintiff's Statement of Facts at ¶ 9-12.

Mr. McCarthy was incarcerated at the Bucks County Correctional Facility from March 7, 2006 through March 17, 2006, when he was transported to Doylestown Hospital.  At Doylestown Hospital he received treatment for an abscess and was hospitalized for ten days.[2]

Dr. David Davis, a licensed medical doctor in the Commonwealth of Pennsylvania, is the medical director of the Bucks County Correctional Facility Dispensary. Defendants' Statement of Facts at ¶¶ 115-116; Plaintiff's Statement of Facts at ¶¶ 115-116.  The prison dispensary provides medical services for Bucks County Correctional

---

[2]    While at the Bucks County Correctional Facility, Mr. McCarthy was seen almost daily by medical staff and was treated for drug withdrawal and hypertension. When Mr. McCarthy expressed pain in his wrist and arm, the arm injury was treated with an ace bandage, medicine, a consultation with an orthopedist, and a consultation with a hand surgeon when the surgeon was next available.

For a detailed description of the medical treatment Mr. McCarthy received while incarcerated at the Bucks County Correctional Facility, please see the Memorandum Opinion addressing Dr. David Davis's motion for summary judgment.

Facility inmates.  Id. at ¶ 127.  Dr. Eleanor Travers was the director of the Bucks County

Department of Health at the time of Mr. McCarthy's incarceration.  Id. at ¶ 126.  Dr.

Travers oversaw the Department of Health staff "responsible for providing care in the

Bucks County Correctional Facility."  Id. at ¶ 128; Plaintiff's Statement of Facts at Exh.

qq.


**B.      Bucks County Correctional Facility's Policies**

On November 11, 2003, the Accreditation Committee of the National Commission

on Correctional Health Care voted to continue to accredit the Bucks County Correctional

Facility for its compliance with the National Commission on Correctional Health Care

Standards.  See Defendants' Statement of Facts at ¶ 95; Plaintiff's Statement of Facts at ¶

95.  The accreditation extended through October 2006.  Id.  at ¶ 96.  On August 11, 2005,

the Pennsylvania Department of Corrections found the Bucks County Correctional

Facility in compliance with Pennsylvania Code Title 37, Chapter 95.  Id. at ¶ 97.  This

statute provides standards for county jails, including standards governing medical and

health services.  Id. at ¶ 98.

The Bucks County Department of Health promulgated policies for meeting the

serious medical needs of prison inmates.  See Defendants' Statement of Facts at ¶ 99;

Plaintiff's Statement of Facts at ¶ 99.  Policy J-A-01 states "inmates have access to care

to meet any medical, dental and mental health needs without any barriers."  See Plaintiff's

Statement of Facts at Exh. oo. Policy J-A-02 states "[t]he designated health authority for

Bucks County Department of Corrections Medical Services is Bucks County Department

of Health. The Department of Health oversees all levels of health care and assures

quality, accessible and timely health services for inmates." Id. at Exh. pp. Policy J-A-05

requires an annual review of existing health care policies and procedures. See

Defendants' Statement of Facts at ¶ 102; Plaintiff's Statement of Facts at ¶ 102. Policy P-

A-11 provides a grievance mechanism for inmates. Id. at ¶ 103. Policy J-C-01 requires

appropriate credentialing for health care personnel. Id. at ¶ 104. Policy J-C-04 provides

for healthcare training for correction workers. Id. at ¶ 105. Policy J-C-06 prohibits

inmates from being used as healthcare workers. Id. at ¶ 106. Policy J-E-01 requires

Bucks County Correctional Facility inmates receive information on all health services.

See Defendants' Statement of Facts at Exh. ff. Policy J-E-02 requires the screening of

new inmates, including a visual inspection. See Defendants' Statement of Facts at ¶ 108;

Plaintiff's Statement of Facts at ¶ 108. Policy J-E-07 provides that inmates have an

opportunity to request health care on a daily basis. Id. at ¶ 109. Policy J-E-08 provides

for twenty-four hour emergency care. Id. at ¶ 110. Policy J-E-12 provides for continuity

of care. Id. at ¶ 111. Policy J-G-03 provides for infirmary care and, when appropriate,

placement at Doylestown Hospital. Id. at ¶ 112. Policy J-D-04 provides all diagnostic

services available to the general population are available to inmates. Id. at ¶ 113. Policy

J-E-04 requires a health assessment be performed on all inmates within fourteen days of

incarceration.  See Defendants' Statement of Facts at ¶ 114; Plaintiff's Statement of Facts

at ¶ 114.

The Bucks County Correctional Department of Health Manual provides for two

types of medical watch:  regular and acute.  See Plaintiff's Statement of Facts at Exh. yy.

Regular watch requires that module officers observe the inmate every fifteen minutes, an

inmate monitor observe the inmate every fifteen minutes, and both the officer and inmate

monitor make entries on the inmate monitor form.  Id.  The inmate and officer are to

stagger their observations.  Id.  Acute watch requires that the module officers observe the

inmate every five minutes and record their findings and an inmate monitor is stationed

outside the cell door to continuously observe the sick inmate.  The inmate monitor will

make entries on the inmate monitor form, but "the module officer remains responsible for

maintaining the five (5) minute watch, and accuracy of the entries made at that time."  Id.

At different times during his incarceration, Mr. McCarthy was placed on regular and

acute watch.  Dr. Davis stated he did not review the notations made by inmate monitors.

See Plaintiff's Statement of Facts at Q at 87.


## II.    STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

An issue is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the case under the governing law." Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its initial burden, the adverse party's response "must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The court must decide "not whether . . . the evidence unmistakably favors one side or the other

6

but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity of the [moving party's] evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

For a government entity to be held "liable for the violation of a constitutional right under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation." See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004) (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997)).[3] "A plaintiff can establish causation by 'demonstrat[ing] that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'" Id. (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okla., 520 U.S. at 407) (alteration in original). The plaintiff "must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. of Education, 587 F.3d 176, 193 (3d Cir. 2009)

---

[3] Dr. Travers has been named as a defendant in her official capacity. "A suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself." A.M. ex rel. J.M.K., 372 F.3d at 580 (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)).

(Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)).

To establish a government entity is liable for a violation of rights as a result of a municipal policy or custom, the plaintiff must show the policymakers were aware of the constitutional violations and "of the alternatives for preventing them, but either deliberately chose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction." Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (quoting Simmons v. City of Phila., 947 F.2d 1042, 1064 (3d Cir. 1991)). "'Proof of a single incident of unconstitutional activity is not sufficient to impose liability under [Monell v. New York City Dept. Of Social Services, 436 U.S. 658 (1978)], unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary . . . to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Id. at 824.

Bucks County had policies in place addressing the administration of health care to prison inmates. These policies were approved by the Accreditation Committee of the National Commission on Correctional Health Care. The Pennsylvania Department of Corrections found the Bucks County Correctional Facility in compliance with the Pennsylvania law that provides standards for the mental and health services available in

8

county jails.

Mr. McCarthy argues the treatment he received violated the policies. Mr.

McCarthy relies on his deposition testimony regarding his experience. Mr. McCarthy

testified he did not receive an inmate handbook containing the grievance procedure. See

Plaintiff's Statement of Facts at Exh. B at 245-46. He alleges he was not seen by medical

personnel prior to his incarceration, even though he was injured.[4] He alleges he did not

have access to twenty-four hour care, the nurses failed to take his vital signs, the nurses

failed to start wet and dry dressings in compliance with the policy for treatment of

abscesses, and Mr. McCarthy did not receive all diagnostic services available to the

general public. See Plaintiff's Response at 18 of 29, 24 of 29. Mr. McCarthy also was

taken to Abington Hospital, not Doylestown Hospital, and, when Abington Hospital did

not treat him, he was not taken to the emergency room. Id. at 23 of 29.

Even if Mr. McCarthy was able to prove the Bucks County Correctional Facility

medical staff deviated from the promulgated policies, he does not present evidence that

any deviation was a recurring event or that any deviation was so obvious that Bucks

County should have been aware inmates were being deprived of constitutional rights. He

presents no testimony or evidence of other instances in which prison employees allegedly

failed to follow the policies regarding inmate medical care.

---

[4] See Plaintiff Kevin McCarthy's Memorandum of Law in Support of his Response to the Defendants' Travers and County of Bucks' Motion for Summary Judgment at 18 of 29, McCarthy v. County of Bucks, No. 08-1123 (E.D. Pa. filed July 2, 2010) [hereinafter Plaintiff's Response].

Mr. McCarthy also does not establish any official with policy-making authority, including Dr. Travers, knew about his injuries and care during his incarceration at Bucks County Correctional Facility. Mr. McCarthy details his complaints and the treatment he received over his nine days at the prison and argues Dr. Travers and Bucks County knew of his condition. He presents no evidence to prove Dr. Travers and Bucks County knew. Dr. Travers testified she supervised Dr. Davis, provided assistance to the medical staff and evaluated Dr. Davis, and attended quarterly meetings to discuss infections. See Exh. qq. Dr. Travers testified she was not involved in the individual cases.[5] See id. at 93-95.

In addition, Mr. McCarthy relies on the policy regarding regular and acute medical watch, which provides an inmate monitor will observe an inmate on regular watch and continuously watch an inmate on acute watch. Mr. McCarthy believes the use of inmate monitors violates the prison policy J-C-06. Policy J-C-06 provides: "no inmate within the Bucks County Correctional system is permitted to function as a health care worker, have access to medical records, equipment or supplies. Any inmate worker within the health care services area is under direct supervision at all times." Defendants' Statement of Facts at Exh. ee. The policy also allows for inmates to have a job known as "[i]nmate monitor." Id. An inmate monitor's job description includes:

> a. Assist the module officer in observation of other inmates who may need assistance due to medical or psychiatric reasons.

---

[5] Dr. Travers testified she was part of a group which conducted an individual case review in April 2006, but she did not recall the patient. See Plaintiffs Statement of Facts at Exh. qq at 94-95.

b. Monitor and observe inmates who may attempt self-injury or have physical reactions to medical problems.

c. Acute watch monitors must maintain constant observation of assigned inmate.

d. Monitor must alert the module officer to suspicious, unusual behavior.

e. Inmate monitors will not leave assigned watch post unless properly relieved by another qualified monitor or approved by the module officer.

f. Regular Watch – Inmate Monitor

It is your responsibility to monitor up to 8 inmates of regular watch. You will report any unusual behavior, suicide threats, and gestures of requests by regular watch inmates to the module officer.

Id. This job description does not permit an inmate to function as a health care worker. Mr. McCarthy presents evidence the prison had inmates watching him when he was on regular and acute watch, and that Dr. Davis did not review the inmates' notes. He does not show the prison allowed an inmate to provide health care to Mr. McCarthy.

Mr. McCarthy makes numerous allegations that Dr. Davis and the medical personnel at the Bucks County Correctional Facility deviated from the prison's healthcare policies. Even if the policies were not followed, Mr. McCarthy does not show that Dr. Travers or Bucks County knew the policies were violated. Therefore, Dr. Travers and Bucks County could not have taken "municipal action . . . with deliberate indifference as to its known or obvious consequences." See A.M. ex rel. J.M.K., 372 F.3d at 580 (citing Hafer, 502 U.S. at 25). I will grant Dr. Travers's and Bucks County's motion for summary judgment.

## IV. CONCLUSION

I will grant Dr. Travers's and Bucks County's motion for summary judgment. Dr. Travers and Bucks County presented evidence of policies addressing health care for inmates. Mr. McCarthy failed to establish a policy or custom which caused a constitutional violation. He failed to demonstrate a "municipal action was taken with deliberate indifference as to its known or obvious consequences."

An appropriate order follows.