IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KEVIN MCCARTHY,                    :
Plaintiff                          :          Civil Case
                                   :
            v.                     :
                                   :
COUNTY OF BUCKS, et al.            :          No. 08-1123
Defendants                         :

## MEMORANDUM OPINION

Stengel, J.                                    **October 28, 2010**

In March, 2006, Mr. McCarthy was a pre-trial detainee incarcerated at the Bucks

County Correctional Facility.  While incarcerated, Mr. McCarthy suffered from a

wrist/arm abscess, which required surgical removal of the abscess, hospitalization, and

resulted in "some degree of permanent pain and dysfunction."

Mr. McCarthy has filed a second amended complaint against the County of Bucks,

Thomas French, Eleanor M. Travers, Bucks County Health Department, and Dr. David

Davis.[1]  Dr. David Davis, the medical director at the Bucks County Correctional Facility,

filed a partial motion for summary judgment requesting judgment in his favor for the

claim Dr. Davis violated 42 U.S.C.A. § 1983, the negligent infliction of emotional

distress claim, and the punitive damages claim.  For the reasons set forth below, I will

grant the motion.

---

[1] Edward J. Donnelly, Harris Gubernick, John Doe 1, and John Doe 2 are no longer
defendants in this case.  See Docket, McCarthy v. Cnty. of Bucks, No. 08-1123 (E.D. Pa.).  John
Doe 3 has been identified as the Bucks County Health Department.  Id.

## I.    BACKGROUND

On March 7, 2006, Kevin McCarthy turned himself into the Bristol Township Police Department and the Bucks County Sheriff's Department took him into custody.[2] Mr. McCarthy was incarcerated at the Bucks County Correctional Facility. See Defendant's Statement of Facts at ¶ 2; Plaintiff's Statement of Facts at ¶ 2.

Dr. David Davis is Board certified in family medicine, is Board eligible in addiction medicine, and has completed a fellowship in pain management. Id. at ¶ 3. He is the medical director at the Bucks County Correctional Facility, where he works as a full-time, independent contractor. Id. at ¶¶ 4-5. In 2006, Dr. Davis worked on Tuesdays from 8:00 a.m. to 6:00 p.m., and Thursdays and Fridays from 8:00 a.m. to 5:30 p.m. See Defendant's Statement of Facts at ¶ 8; Plaintiff's Statement of Facts at ¶ 8. He routinely saw 35 to 40 patients a day. Id. at ¶ 9. Dr. Davis was on call seven days a week and, if a nurse had a question about an order for a patient, the nurse could reach Dr. Davis on his pager. Id. at ¶ 10.

Pursuant to the Department of Public Health Manual, used by Bucks County Correctional Facility, the medical staff must complete a full assessment upon all inmates within fourteen days of incarceration. Plaintiff's Statement of Facts at Exh. F. If an inmate has an injury, he is not admitted until medical personnel has seen him. Id. at Exh.

---

[2] Defendant Dr. Davis's Concise Statement of Material Facts at ¶ 1, McCarthy v. Cnty. of Bucks, No. 08-1123 (E.D. Pa. filed June 2, 2010); Plaintiff Kevin McCarthy's Response to Defendant Dr. Davis's Concise Statement of Undisputed Facts at ¶ 1, McCarthy v. Cnty. of Bucks, No. 08-1123 (E.D. Pa. filed July 2, 2010).

ss.  At Dr. Davis's deposition he stated a nurse examines each inmate within 48 hours of incarceration and processing and Dr. Davis examines each inmate within two weeks of incarceration.  <u>See</u> Defendant's Statement of Facts at Exh. D at 110-11.

Bucks County Correctional Facility is staffed by nurses twenty-four hours per day. <u>Id.</u> at Exh. D at 14; <u>see</u> Defendant's Statement of Facts at ¶ 12; Plaintiff's Statement of Facts at ¶ 12.  It has a contract with Doylestown Hospital for admission of all prison patients.[3]  <u>See</u> Defendant's Statement of Facts at ¶ 13; Plaintiff's Statement of Facts at ¶ 13.

Bucks County Correctional Facility's policy is to fingerprint both hands of a new inmate.  Mr. McCarthy's left hand was not fingerprinted.  <u>See</u> Plaintiff's Statement of Facts at Exh. K.  Officer John Bailie, the officer who fingerprinted Mr. McCarthy, stated "I usually ask a person if your hands hurt you . . . if they tell me yes, then I say are you willing to get fingerprinted?  And if they say no, I will say okay.  And I don't fingerprint them."  <u>Id.</u> at Exh. I at 47.  Officer Bailie stated the only other reasons he would not fingerprint a hand are if the hand was missing fingers or if the prisoner was unruly.  If unruly, the prisoner would not sign the fingerprint card.  <u>Id.</u> at 48, 51.  Mr. McCarthy signed the fingerprint card.  <u>See</u> Plaintiff's Statement of Facts at Exh. K.

When Mr. McCarthy was incarcerated on March 7, 2006, a classification report was completed.  <u>See</u> Defendant's Statement of Facts at ¶ 16; Plaintiff's Statement of

---

[3]  Mr. McCarthy, however, initially was taken to Abington Hospital.

Facts at ¶ 16. Mr. McCarthy's primary classification was drug detoxification and the report noted daily use of heroin, Methadone, and Xanax. See Defendant's Statement of Facts at Exh. B. It stated Mr. McCarthy had reflex sympathetic dystrophy,[4] his left arm was ripped off two years ago, he had limited motion in his hand, arm, and legs, and he took Benacane and Methadone. Id. It also stated he was under a doctor's care for his left arm injury and for high blood pressure. Id.

On March 7, 2006, a nurse saw Mr. McCarthy. She took his blood pressure, which was 160/114, recorded a pulse of 80, and recorded a temperature of 98.2. See Defendant's Statement of Facts at ¶ 20; Plaintiff's Statement of Facts at ¶ 20. The nurse made a notation that Mr. McCarthy had taken Xanax and Methadone earlier that day. Id. at ¶ 21. The nurse called Dr. Davis who ordered Cardizem, which is used to treat high blood pressure. Id. at ¶ 22.

On March 8, 2006 and March 9, 2006, Mr. McCarthy was transported to and from the Bucks County Courthouse. See Defendant's Statement of Facts at Exh. G.

On March 9, 2006 at 1:00 a.m., Mr. McCarthy was found in his cell huddled over with chest pain. See Defendant's Statement of Facts at ¶ 26; Plaintiff's Statement of Facts at ¶ 26. The officers contacted the dispensary. Nurse Mullen noted Mr. McCarthy

---

[4] "Reflex sympathetic dystrophy syndrome . . . is a condition that features a group of typical symptoms, including pain (often "burning" type), tenderness, and swelling of an extremity associated with varying degrees of sweating, warmth and/or coolness, flushing, discoloration, and shiny skin." MedicineNet.com, Reflex Sympathetic Dystrophy Syndrome, http://www.medicinenet.com/reflex_sympathetic_dystrophy_syndrome/article.htm (last visited Oct. 12, 2010).

made complaints of chest wall pain and was grasping at his mid-sternum, he had

gooseflesh and rhinitis. See Plaintiff's Statement of Facts at Exh. L. The nurse called Dr.

Davis, who ordered an opiate detoxification protocol and a Benzodiazepine protocol for

Xanax withdrawal. See Defendant's Statement of Facts at H.

On March 9, 2006, Mr. McCarthy underwent a medical history and physical

assessment. See Defendant's Statement of Facts at ¶ 28; Plaintiff's Statement of Facts at

¶ 28. The medical history and physical assessment reported Mr. McCarthy suffered reflex

sympathetic dystrophy and a skin graft in his left arm and noted he had been electrocuted

in 2003, which resulted in a fasciotomy[5] requiring a skin graft from his leg. He denied

open wounds. Mr. McCarthy reported taking Methadone, Xanax, and Neurotin and

reported using heroin. See Defendant's Statement of Facts at Ex. I. Mr. McCarthy

testified that, although there were no open wounds, the handcuffs left a noticeable scar.

See Plaintiff's Statement of Facts at Exh. B at 173. Dr. Davis diagnosed Mr. McCarthy

as a "thirty-nine year old white male with pneumonia. On Methadone withdrawal and

hypertension." See Defendant's Statement of Facts at Exh. I. Mr. McCarthy maintains he

told Dr. Davis he "was handcuffed and my left arm is killing me," but Dr. Davis "didn't

pay too much attention about it at all." See Plaintiff's Statement of Facts at Exh. B at 94.

Following the medical history and physical assessment, Dr. Davis ordered Catapres, a

---

[5] "Fasciotomy is a surgical procedure that cuts away the fascia to relieve tension or pressure." The Free Dictionary, Medical Dictionary, Fasciotomy, http://medical-dictionary.thefreedictionary.com/fasciotomy (last visited on Oct. 7, 2010).

drug used to treat hypertension. The order also stated the doctor would re-check Mr.

McCarthy in 24 hours, and Mr. McCarthy was to have all meals in his cell, use an

Albuterol inhaler, and was placed on bottom-bunk status. <u>See</u> Defendant's Statement of

Facts at ¶ 32; Plaintiff's Statement of Facts at ¶ 32.

On March 9, 2006, Mr. McCarthy had chest discomfort but was able to breath.

Officer Ramochak called the dispensary, and Mr. McCarthy was instructed to lie down.[6]

On March 9, 2006, Dr. Davis gave a telephone order for a chest x-ray to be performed in

the morning. <u>See</u> Defendant's Statement of Facts at ¶ 34; Plaintiff's Statement of Facts at

¶ 34. The nurse noted Mr. McCarthy was to have a chest x-ray in the morning and was to

remain on regular medical watch. <u>Id.</u> at ¶ 35.

Late March 9, 2006 or early March 10, 2006, Mr. McCarthy complained of chest

pain extending to his right shoulder, right arm, and back. <u>Id.</u> at ¶ 36. He was brought to

the dispensary. <u>Id.</u> The nurse noted his skin was "warm, dry" and noted "scattered

rhonchi."[7] <u>See</u> Defendant's Statement of Facts at Exh. E; Plaintiff's Statement of Facts at

Exh. O. The nurse also noted he was going through detoxification for Xanax, heroin, and

Methadone. <u>Id.</u> The nurse noted Mr. McCarthy would be placed on acute medical watch

and would see the physician and get an x-ray in the morning. <u>Id.</u>

---

[6] Dr. Davis testified that he did not see this, or any, note written while Mr. McCarthy was on medical watch. Plaintiff's Statement of Facts at Exh. C at 86-87.

[7] Scattered rhonchi "is a coarse rattling sound which occurs due to secretions in the bronchial airways." WD, Scattered Rhonchi, http://www.wrongdiagnosis.com/sym/scattered_rhonchi.htm (last visited Oct. 14, 2010).

On March 10, 2006 at 1:15 p.m., Mr. McCarthy complained of fluid in his chest and was vomiting and shaking.  See Plaintiff's Statement of Facts at Exh. S.  Officer Baker called the dispensary.  Id.  On March 10, 2006 at 2:15 p.m., Officer Harper noted Mr. McCarthy complained of chest pain and constant vomiting.  The dispensary told Officer Harper it would see Mr. McCarthy later.  See Defendant's Statement of Facts at Exh. Q; Plaintiff's Statement of Facts at Exh. bb.  At 6:00 p.m. Officer Harper noted he called the dispensary and called for any available nurse.  He was informed the nurses were taking a break and they would not do anything until after the break.  He noted Nurse Grabowski called and stated the nurses "are not doing anything" and "[Mr. McCarthy] is faking."  Plaintiff's Statement of Facts at Exh. U.  Officer Harper contacted Lieutenant Landis and reported Mr. McCarthy was on the floor and shaking, but the nurses would not respond.  Defendant's Statement of Facts at Exh.Q; Plaintiff's Statement of Facts at Exh. dd.  Officer Harper called a medical emergency.  Id.  The progress notes following the medical emergency indicate Nurse Grabowski obtained Mr. McCarthy's vital signs.  See Defendant's Statement of Facts at Exh. M.  The medical emergency was cleared at 6:15 p.m.  Defendant's Statement of Facts at ¶ 65; Plaintiff's Statement of Facts at ¶ 65.

Dr. Davis saw Mr. McCarthy on March 10, 2006. Dr. Davis noted Mr. McCarthy had bilateral pneumonia, positive dyspnea,[8] and that Mr. McCarthy had a temperature of

---

[8] Dyspnea is "[d]ifficult or labored breathing; shortness of breath.  Dyspnea is a sign of serious disease of the airway, lungs, or heart."  MedicineNet.com, Definition of Dyspnea, http://www.medterms.com/script/main/art.asp?articlekey=3145 (last visited Oct. 13, 2010).

101.4 degrees.  See Defendant's Statement of Facts at ¶ 40; Plaintiff's Statement of Facts at ¶ 40.  Mr. McCarthy underwent a chest x-ray on March 10, 2006, the results of which were normal.  Id. at ¶ 41.

On March 11, 2006, a detoxification flow sheet was initiated to chart Mr. McCarthy's progress and included a column for physical complaints.  See Defendant's Statement of Facts at Ex. M 197-201.  No physical complaints were documented on the flow sheet for March 11, 2006 or March 12, 2006.  Id.  Mr. McCarthy testified he said he had left arm pain, had a lot of anxiety, and could not deal with the pain.  See Plaintiff's Statement of Facts at Exh. B at 81-82, 91.

On March 13, 2006, the detoxification flow sheet documents a physical complaint of left arm pain.  Defendant's Statement of Facts at ¶ 47; Plaintiff's Statement of Facts at ¶ 47.  On March 13, 2006 at 11:35 a.m., Mr. McCarthy was taken to the dispensary.  Nurse Mazurek noted Mr. McCarthy's left wrist was red and warm to touch and noted Mr. McCarthy was experiencing difficulty straightening his fingers.  Defendant's Statement of Facts at ¶ 49; Plaintiff's Statement of Facts at ¶ 49.

Nurse Mazurek called Dr. Davis, who instructed the nurse to order a brace for Mr. McCarthy.  Id. at ¶ 50.  Dr. Davis testified the brace was for a prior injury/pre-existing condition and the brace ordered was from Mr. McCarthy's home.  See Defendant's Statement of Facts at Exh. J at 80-81.  Mr. McCarthy testified he needed a brace in 2000, but did not need the brace after the hospital discharged him in 2000.  See Plaintiff's

Statement of Facts at Exh. B at 107. Dr. Davis also ordered Catapres. See Defendant's

Statement of Facts at ¶ 52; Plaintiff's Statement of Facts at ¶ 52.

On March 14, 2006 at 12:20 p.m., Nurse Mazurek noted Mr. McCarthy's

temperature was 101.4 degrees and noted "left wrist red and swollen - cellulitis?[9] To see

Dr. Davis." See id. at ¶ 53; Plaintiff's Statement of Facts at Exh. W. Dr. Davis saw Mr.

McCarthy on March 14, 2006. See Defendant's Statement of Facts at ¶ 54; Plaintiff's

Statement of Facts at ¶ 54. He noted Mr. McCarthy's wrist was "positive for erythema,[10]

mild edema,[11] thirteen centimeters by fifteen centimeters, left wrist." Id. Mr. McCarthy

had a temperature of 100 degrees. See Plaintiff's Statement of Facts at Exh. Z. Dr. Davis

took a photograph of Mr. McCarthy's left arm/wrist. See Defendant's Statement of Facts

at ¶ 55; Plaintiff's Statement of Facts at ¶ 55. Dr. Davis's notes state Mr. McCarthy

suffered from a "crush injury with compartment syndrome[12]–compartment syndrome

---

[9] "Cellulitis is a spreading bacterial infection of the skin and tissues beneath the skin. Cellulitis usually begins as a small area of tenderness, swelling, and redness. As this red area begins to enlarge, the person may develop a fever -- sometimes with chills and sweats -- and swollen lymph nodes ('swollen glands') near the area of infected skin." MedicineNet.com, Cellulitis, http://www.medicinenet.com/cellulitis/article.htm (last visited Oct. 12, 2010)

[10] Erythema is defined as "[a] redness of the skin from inflammation . . . ." MedicineNet.com, Definition of Erythema, http://www.medterms.com/script/main/art.asp?articlekey=3306 (last visited Oct. 12, 2010).

[11] "Edema is observable swelling from fluid accumulation in body tissues. . . . The swelling is the result of the accumulation of excess fluid under the skin in the spaces within the tissues." MedicineNet.com, Edema, http://www.medicinenet.com/edema/article.htm (last visited Oct. 12, 2010).

[12] "Compartment syndrome is a condition that occurs when injury causes generalized painful swelling and increased pressure within a compartment to the point that blood cannot

9

secondary to concrete truck accident; chest positive for bronchi bilateral bronchi; negative for rales; pulse oximetry, ninety-eight percent." Id. at ¶ 56; Defendant's Statement of Facts at Exh. O at 62-63. Dr. Davis's differential diagnosis included: compartment syndrome, osteomyelitis,[13] and cellulitis of the left wrist. See Defendant's Statement of Facts at ¶ 57; Plaintiff's Statement of Facts at ¶ 57. Dr. Davis placed Mr. McCarthy on medical watch and ordered Bactrim, Naprosyn, Tylenol, and Prednisone. Id. at ¶ 58. Dr. Davis was concerned for infection and inflammation and Mr. McCarthy had informed Dr. Davis that his wrist was painful. See Plaintiff's Statement of Facts at Exh. C at 87-88.

On March 15, 2006, a nurse saw Mr. McCarthy and re-applied the left wrist ace bandage wrap. See Defendant's Statement of Facts at ¶ 61; Plaintiff's Statement of Facts at ¶ 61. On March 16, 2006, a notation on the order sheet states "consult Dr. Takai," who was an orthopedic surgeon who specialized in the hand. See Plaintiff's Statement of Facts at Exh. Y. Mr. McCarthy, however, was referred to Dr. John Wolf,[14] an orthopedic surgeon who does not specialize in the hand. See Defendant's Statement of Facts at Exh. Q. This referral was marked urgent. Id. Mr. McCarthy complained to Dr. Wolf that his left arm was swollen and painful with contracture of the left hand/wrist as a result of

---

supply the muscles and nerves with oxygen and nutrients." MedicineNet.com, Compartment Syndrome, http://www.medicinenet.com/compartment_syndrome/article.htm (last visited Oct. 12, 2010).

[13] Osteomyelitis is infection in the bone. MedicineNet.com, Osteomyelitis, http://www.medicinenet.com/osteomyelitis/article.htm (last visited Oct. 12, 2010).

[14] Although the referral states "Dr. Wolfe," the doctor's name is "Dr. John Wolf."

handcuffing on March 7, 2006.  See Defendant's Statement of Facts at Exh. R.  Dr. Wolf's evaluation states Mr. McCarthy's "fist is clutched and his fingers are digging into the palm of his hand."  See Defendant's Statement of Facts at Exh. R; Plaintiff's Statement of Facts at Exh. gg.  It notes "[t]here is a bit of redness over the radial side of his wrist and forearm, and indeed his hand is ball down in full flexion with his fingers in full flexion and he had pain on touching him anywhere."  Id.  His wrist was "large and a little bit red."  Id.  Dr. Wolf's summary states the injury was handcuff related.  See Plaintiff's Statement of Facts at Exh. ff.  Dr. Wolf noted Mr. McCarthy needed further evaluation by a hand surgeon, but the three hand surgeons were "tied up in the operating room" on March 16, 2006.  See Defendant's Statement of Facts at Exh. R; Plaintiff's Statement of Facts at Exh. gg.

On March 16, 2006, Dr. Davis saw Mr. McCarthy and noted Mr. McCarthy received "no care" from Dr. Wolf.  See Defendant's Statement of Facts at Exh. S; Defendant's Statement of Facts at ¶ 70; Plaintiff's Statement of Facts at ¶ 70.  Dr. Davis ordered a consult with Dr. Gregory Gallant for March 17, 2010 and ordered Valium, Toradol, and complete bed rest.  See Defendant's Statement of Facts at Exh. T.  March 16, 2006 was the last time Dr. Davis saw Mr. McCarthy as a patient at Bucks County Correctional Facility.  See Defendant's Statement of Facts at ¶ 76; Plaintiff's Statement of Facts at ¶ 76.

On March 17, 2006, Mr. McCarthy was taken to Doylestown Hospital, where he

saw Dr. Gallant and was admitted to the hospital. Id. at ¶ 77. He presented with left upper extremity pain, redness, swelling, and a clinched fist. See Plaintiff's Statement of Facts at Exh. ii. Dr. Gallant noted Mr. McCarthy could not move his wrist or fingers due to secondary pain and he questioned an infection in Mr. McCarthy's left arm. Id. The MRI indicated an abscess[15] had formed. See Plaintiff's Statement of Facts at Exh. jj. Dr. Gallant recommended immediate incision and drainage of Mr. McCarthy's left forearm and wrist abscess, with debridement and "urgent admission to the hospital." Id.; Plaintiff's Statement of Facts at Exh. ii. Dr. Gallant noted it was "most likely the worst abscess I have seen in my 11 year career thus far." See Plaintiff's Statement of Facts at Exh. jj. Dr. Gallant noted he explained to Mr. McCarthy that he would "have some degree of permanent pain and dysfunction in the arm and is also at risk for further infection." See Plaintiff's Statement of Facts at Exh. kk.

Mr. McCarthy presented two expert reports. Dr. Michael R. Greenberg[16] reviewed the record and found, among other items, that Dr. Davis and the Bucks County Correctional Facility medical department "failed to recognize the signs of a systematic infection including fever, pain, fatigue, shaking and abnormal vital signs," "failed to

---

[15] "An abscess is a tender, easily pressed mass generally surrounded by a colored area from pink to deep red." WebMD, Abscess, http://www.webmd.com/a-to-z-guides/abcess (last visited Oct. 12, 2010).

[16] Dr. Greenberg is the medical director and a clinical professor at Lock Haven University Physician Assistant Program, commissioner for the Accreditation Review Commission for the Physician Assistant, medical director of the Clinton County Correctional Facility, and medical director of the Centre County Correctional Facility.

adequately diagnose and treat Mr. McCarthy's abscess which [sic] the immediate cause for surgical intervention and permanent injury," and "Mr. McCarthy's healing was inhibited by Dr. Davis['s] inappropriate prescription of high doses of glucocorticoids." See Plaintiff's Statement of Facts at Exh. X. Dr. Daisy Ann Rodriguez of the Injury Rehabilitation Centers of Pennsylvania found with a reasonable degree of medical certainty that "Mr McCarthy sustained a severe and permanent injury to his left hand, wrist and arm when a Bucks County sheriff placed handcuffs too tightly on his left wrist." Dr. Rodriquez opines that this "created a chain of events including, hospitalization, [and] incision and drainage . . . of an abscess . . . ." Id. at Exh. dd.

Count I of Mr. McCarthy's complaint raises a § 1983 claim against all defendants, count III alleges a negligence claim against Dr. Davis, count IV alleges a negligent/intentional infliction of emotional distress claim against Dr. Davis, John Doe 1, and John Doe 3, and count VI alleges a punitive damages claim against Dr. Davis, John Doe 1, and John Doe 3.

Dr. Davis filed a partial motion for summary judgment requesting judgment in his favor for count I, count IV, and count VI. He does not challenge count III.

II.      STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" when "a reasonable jury could return a verdict for the nonmoving

party" based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the

case under the governing law." Id.

A party seeking summary judgment initially bears responsibility for informing the

court of the basis for its motion and identifying those portions of the record that "it

believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof

on a particular issue at trial, the moving party's initial Celotex burden can be met simply

by demonstrating to the district court that "there is an absence of evidence to support the

non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its

initial burden, the adverse party's response "must--by affidavits or as otherwise provided

in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P.

56(e)(2). Summary judgment is therefore appropriate when the non-moving party fails to

rebut by making a factual showing that is "sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of

proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all

justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The

court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity of the [moving party's] evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    DISCUSSION

### A.    Fourteenth Amendment Claim – Failure to Provide Medical Treatment

Mr. McCarthy was a pre-trial detainee at the Bucks County Correctional Facility. He alleges Dr. Davis violated the Fourteenth Amendment. For Fourteenth Amendment claims alleging a failure to provide medical care, the Eighth Amendment standard provides a floor below which the medical treatment of pretrial detainees cannot fall. Hubbard v. Taylor, 399 F.3d 150, 165-66 (3d Cir. 2005) (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (2005)).[17] To state an Eighth Amendment inadequate treatment claim, a plaintiff must state (1) he has a serious medical need, and (2) the

_____

[17]   "Eighth Amendment scrutiny is appropriate only after . . . [conviction]." Hubbard, 399 F.3d at 165 (quoting City of Revere, 463 U.S. at 244). For pretrial detainees, the Eighth Amendment is relevant "only because it establishe[s] a floor." Id. (quoting City of Revere, 463 U.S. at 244). The Supreme Court has stated "the due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." Id. (quoting City of Revere, 463 U.S. at 244).

defendants were deliberately indifferent to that need.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1986).

"A medical need is 'serious,'. . . if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  Monmouth Cnty Corr. Institutional Inmates, 834 F.2d at 347 (quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)).

Deliberate indifference "requires 'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (internal citations omitted).  A plaintiff can prove a defendant's knowledge of a risk with circumstantial evidence. Beers-Capitol v. Whetzel, 256 F.3d 120,131 (3d Cir. 2001).  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id. (quoting Farmers v. Brennan, 511 U.S. 825, 842 (1994)) (alteration in original).

"[C]onsiderable latitude" is afforded "to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients."  Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).  Medical malpractice and negligence do not establish the defendants are deliberately indifferent.  Estelle, 429 U.S. at 106.

Similarly, mere disagreement about the proper medical treatment will not support an

Eighth Amendment claim. Monmouth Cnty. Corr. Institutional. Inmates, 834 F.2d at 346.

However, deliberate indifference may be established where prison officials "deny

reasonable requests for medical treatment . . . and such denial exposes the inmate 'to

undue suffering or the threat of tangible residual injury.'" Id. (quoting Westlake v. Lucas,

537 F.2d 857, 860 (6th Cir. 1976)). In addition, deliberate indifference is demonstrated

where "prison authorities prevent an inmate from receiving recommended treatment for

serious medical needs or deny access to a physician capable of evaluating the need for

such treatment." Id. (quoting Inmates of Allegheny Cnty. Jail, 612 F.2d at 762).

     Dr. Davis presents evidence Mr. McCarthy received medical treatment almost

daily from the date of his incarceration on March 7, 2010 through the date of his

hospitalization on March 17, 2010. Mr. McCarthy visited the dispensary, was visited by

nurses, and was seen by Dr. Davis. He was treated for drug withdrawal, hypertension,

and pneumonia. He received treatment for his left wrist after documentation of his

complaints. The documents do not indicate current wrist/arm pain until March 13, 2006.

After the complaints, Dr. Davis treated the wrist with an ace bandage, placed Mr.

McCarthy on medical watch, and ordered Bactrim, Naprosyn, Tylenol, and Prednisone.

In addition, he ordered a consultation with an orthopedist and a consultation with an

orthopedist who specializes in the hand.

     Mr. McCarthy argues his left hand was not fingerprinted because of his injury, he

informed the person completing his intake form his hand was injured when he was handcuffed,[18] and he complained about wrist pain to the nurses and to Dr. Davis. In addition, Dr. Davis was aware Mr. McCarthy suffered from reflex sympathetic dystrophy. Mr. McCarthy presents two expert reports which find Dr. Davis and the Bucks County Correctional Facility provided inadequate care and caused harm to Mr. McCarthy. In addition, Mr. McCarthy argues the guards and nurses made notations regarding Mr. McCarthy's symptoms of systemic infection arising from the failure to treat Mr. McCarthy's abscess. Dr. Davis ignored these notations. Mr. McCarthy argues, although Dr. Davis treated Mr. McCarthy for hypertension and withdrawal, he did not treat Mr. McCarthy for the wrist injury.

I will grant Dr. Davis's motion for summary judgment for the Fourteenth Amendment claim because Mr. McCarthy cannot establish a genuine issue of material fact. The evidence presented by Mr. McCarthy fails to establish Dr. Davis was deliberately indifferent. The record is replete with evidence of medical treatment. Mr. McCarthy visited the dispensary, and the nurses and Dr. Davis saw Mr. McCarthy at the dispensary and in his cell. Dr. Davis treated Mr. McCarthy for drug withdrawal and hypertension. When Mr. McCarthy expressed pain in his wrist and arm, Dr. Davis treated Mr. McCarthy for the injury with an ace bandage, medicine, a consultation with an

---

[18] He told the person that completed the form that his left wrist/hand "was bigger than a basketball" and stated it "was obvious because they wouldn't even touch it to fingerprint it."

orthopedist, and a consultation with a hand surgeon when the surgeon was next available.

Mr. McCarthy cannot establish Dr. Davis acted with "recklessness or a conscious

disregard of a serious risk."  The evidence presented by Mr. McCarthy might, at most,

establish medical malpractice or negligence, which is not sufficient to establish deliberate

indifference.  See Estelle, 429 U.S. at 106.


### B.  Negligent Infliction of Emotional Distress

To establish a negligent infliction of emotional distress claim, the plaintiff must

show he suffered physical injury.  Armstrong v. Paoli Mem'l Hosp., 633 A.2d 605, 609

(Pa. Super. Ct. 1993); accord Toney v. Chester Cnty. Hosp., 961 A.2d 192, 200 (Pa.

Super. Ct. 2008) ("plaintiff must have experienced physical injury as a result of having

been exposed to the traumatic event").  The "physical harm must accompany emotional

distress."  Id.  "Temporary fright, nervous shock, nausea, grief, rage, and humiliation if

transitory are not compensable harm; but, long continued nausea or headaches, repeated

hysterical attacks or mental aberration are compensable injuries."  Id.

Mr. McCarthy alleges he suffered a severe injury because Dr. Davis failed to

provide adequate care.[19]  He presents evidence he was vomiting and shaking, had a fever,

and had pain radiating to his arm.  He was hospitalized and, after he was released, was

---

[19]  Plaintiff Kevin McCarthy's Memorandum of Law in Support of His Response to the Defendant Dr. Davis's Motion for Partial Summary Judgment, Incorrectly Entitled Motion for Summary Judgment at 14 of 18, McCarthy v. Cnty. of Bucks, No. 08-1123 (E.D. Pa. filed July 2, 2010) [hereinafter Plaintiff's Response].

treated at a rehabilitation center.  He argues his reflex sympathetic dystrophy was

exacerbated, and he cannot walk.  Mr. McCarthy maintains he "continues to suffer, both

physically and mentally, as a result of the lack of care at the hands of Dr. Davis."

Plaintiff's Response at 15 of 18.

Mr. McCarthy cannot state a negligent infliction of emotional distress claim

because the physical injury did not result from the emotional distress.[20]  Mr. McCarthy

was a very sick man.  If he sustained any physical injury caused by any defendant, it

would have been from negligence in his medical treatment, which is far from clear on this

record.  In the unlikely event Mr. McCarthy can prove a medical malpractice claim, he

likely can present evidence of his mental health as an element of damages.


**C.**    **Intentional Infliction of Emotional Distress**

Mr. McCarthy agreed to withdraw his claim of intentional infliction of emotional

distress against Dr. Davis.


**D.**    **Punitive Damages**

For a § 1983 plaintiff to receive a punitive damages award "the defendant's

conduct must be, at a minimum, reckless or callous.  Punitive damages might also be

---

[20]  Mr. McCarthy alleges he sufficiently states a cause of action for negligent infliction of
emotional distress because he is a foreseeable plaintiff and he suffered physical injury as a result
of Dr. Davis's negligence.  See Plaintiff's Response at 14 of 18.

allowed if the conduct is intentional or motivated by an evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989). Under Pennsylvania law, punitive damages are available "when the plaintiff has established that the defendant has acted in an outrageous fashion due to either 'the defendant's evil motive or his reckless indifference to the rights of others.'" Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005) (quoting Martin v. Johns-Manville Corp., 494 A.2d 1088, 1098 n.14 (Pa. 1985)).

This case presents a record of regular medical attention to Mr. McCarthy's medical issues. There is no basis for any jury to find Dr. Davis's conduct to be outrageous. I will grant Dr. Davis's summary judgment motion regarding punitive damages because Mr. McCarthy has no evidence at all from which a jury could find Dr. Davis was reckless or callous.

## IV.    CONCLUSION

I will grant Dr. Davis's motion for summary judgment. I will grant summary judgment on the § 1983 claim because Mr. McCarthy fails to establish a jury could find Dr. Davis was deliberately indifferent. I will grant summary judgment on the negligent infliction of emotional distress claim because Mr. McCarthy has alleged physical harm resulted in his physical impairments, not that emotional distress resulted in his physical impairments. I will grant summary judgment as to Mr. McCarthy's punitive damages

claim because Mr. McCarthy cannot establish Dr. Davis acted recklessly.

An appropriate order follows.